UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY R. CONLEY, II,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>        Defendant. | )<br>) No. CV-06-254-CI<br>)<br>) ORDER GRANTING PLAINTIFF'S<br>) MOTION FOR SUMMARY JUDGMENT<br>) AND DIRECTING AN IMMEDIATE<br>) AWARD OF BENEFITS<br>)<br>)<br>)<br>)<br>) |

        BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) and Defendant's Motion for Summary Judgment (Ct. Rec. 17), noted for hearing without oral argument on May 7, 2007. (Ct. Rec. 12.)  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security ("Commissioner").  Plaintiff filed a reply brief on May 7, 2007.  (Ct. Rec. 18.)  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) and directs an immediate award of benefits. Defendant's Motion for Summary Judgment is **DENIED.**  (Ct. Rec. 17.)

**JURISDICTION**

Plaintiff's application for Disability Insurance Benefits ("DIB") alleged an onset date of August 28, 2002. (Tr. 54-57.) The application was denied initially (Tr. 35) and on reconsideration (Tr. 42-43). ALJ Richard Hines held a hearing on November 4, 2005. Plaintiff, appearing pro se, Plaintiff's spouse, and vocational expert Deborah Lapoint testified. (Tr. 203-275.) The ALJ issued a decision finding that Plaintiff was not disabled on December 9, 2005. (Tr. 19-27.) The Appeals Council denied a request for review on August 23, 2006. (Tr. 5-7.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on September 8, 2006. (Ct. Rec. 1, 4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 30 years old on the date of the ALJ's decision and has a high-school education. (Tr. 20, 209.) Plaintiff has worked as a pie maker, security officer, janitor/laborer, cook, and recreational attendant. (Tr. 20, 24, 78.) Plaintiff alleges disability since August 28, 2002, due to herniated back discs. (Tr. 66.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii); 20 C.F.R. § 404, Subpart P, App. 1.   If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.   If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.   If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.   *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   The initial burden is met once Plaintiff establishes that a physical or mental impairment(s) prevents the performance of previous work.   The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.   *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 4

1                              **STANDARD OF REVIEW**

2          Congress has provided a limited scope of judicial review of a

3    Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold

4    the  Commissioner's  decision,  made  through  an  ALJ,  when  the

5    determination  is  not  based  on  legal  error  and  is  supported  by

6    substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th

7    Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

8    "The [Commissioner's] determination that a plaintiff is not disabled

9    will be upheld if the findings of fact are supported by substantial

10   evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)

11   (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a

12   mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th

13   Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*,

14   888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of*

15   *Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

16   Substantial evidence "means such evidence as a reasonable mind might

17   accept as adequate to support a conclusion."  *Richardson v. Perales*,

18   402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences

19   and conclusions as the [Commissioner] may reasonably draw from the

20   evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,

21   293 (9th Cir. 1965).  On review, the Court considers the record as

22   a  whole,  not  just  the  evidence  supporting  the  decision  of  the

23   Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)

24   (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

25          It is the role of the trier of fact, not this Court, to resolve

26   conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

27   supports more than one rational interpretation, the Court may not

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 5

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at the onset that Plaintiff meets the disability requirements set forth in Section 216(I) of the Social Security Act and was insured for disability benefits through September 30, 2003. (Tr. 19, 25.)  The claimant was therefore required to establish disability prior to this date. (Tr. 19.) The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 20.) At steps two and three, the ALJ found that the medical evidence established that during the relevant time frame, Plaintiff suffered from obesity and degenerative disc disease, impairments considered severe but not severe enough, singly or in combination, to meet or medically equal one of the Listings impairments. (Tr. 22, 26.) The ALJ found Plaintiff's testimony regarding his limitations not fully credible (Tr. 24) and concluded that Plaintiff has the RFC to perform a full range of sedentary work. (Tr. 23.) At step four, the ALJ concluded

that Plaintiff is unable to perform his past relevant work.  (Tr. 24.)   It is the Commissioner's burden at step five to show that there are jobs existing in significant numbers in the national economy which Plaintiff can perform, consistent with his medically determinable impairments, functional limitations, age and education. At step five, the ALJ asked a vocational expert whether a person with Plaintiff's hypothesized conditions could perform work in a sufficient number of available jobs in the local and national economy.  The VE opined that the jobs of assembler and cashier could be performed by a person with these limitations, and that a significant number of these jobs exist.  Alternatively, using the Medical-Vocational Guidelines as a framework, the ALJ found that Rule 201.28 would direct a conclusion of not disabled.  (Tr. 24, 26.)  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 25-27.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that the ALJ erred by rejecting the opinions of his treating and examining physicians, and that if they were properly credited, he would be found disabled.  (Ct. Rec. 14 at 8-13.)

The Commissioner opposes the Plaintiff's Motion and asks that the ALJ's decision be affirmed.  (Ct. Rec. 15 at 12.)

**DISCUSSION**

**A.  Weighing Medical Evidence**

In social security proceedings, the claimant must prove the

existence of a physical or mental impairment by providing medical
evidence consisting of signs, symptoms, and laboratory findings; the
claimant's own statement of symptoms alone will not suffice. 20
C.F.R. § 416.908.  The effects of all symptoms must be evaluated on
the basis of a medically determinable impairment which can be shown
to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical
evidence of an underlying impairment has been shown, medical
findings are not required to support the alleged severity of
symptoms. *Bunnell v. Sullivan*, 947, F.2d 341, 345 (9th Cr. 1991).

   A treating or examining physician's opinion is given more
weight than that of a non-examining physician. *Benecke v. Barnhart*,
379 F.3d 587, 592 (9th Cir. 2004).  If the treating or examining
physician's opinions are not contradicted, they can be rejected only
with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821,
830 (9th Cir. 1996).  If contradicted, the ALJ may reject an opinion
if he states specific, legitimate reasons that are supported by
substantial evidence. *See Flaten v. Secretary of Health and Human
Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).  In addition to medical
reports in the record, the analysis and opinion of a non-examining
medical expert selected by an ALJ may be helpful to the
adjudication. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)
(*citing Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).
Testimony of a medical expert may serve as substantial evidence when
supported by other evidence in the record. *Id.*

   Plaintiff contends that the ALJ erred by rejecting the opinions
of treating physician Karen Schaaf, M.D., and of examining physician
William R. Pace, III, M.D.  (Ct. Rec. 14 at 8-13.)  The Commissioner

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 8

responds that the ALJ properly adopted the opinions of both doctors that Plaintiff is capable of sedentary work, and the jobs identified by the VE are within the limitations assessed by Drs. Schaaf and Pace.  The Commissioner further responds that the ALJ properly rejected Dr. Schaaf's opinion that keyboarding is difficult for Plaintiff because such a limitation is inconsistent with Plaintiff's admission "that he played video games seated for up to two hours at a time."  (Ct. Rec. 15 at 8-10.)

On August 28, 2003, Plaintiff suffered an injury to his back when he lifted a bag weighing 30 to 50 pounds while working at Cyrus O'Leary's High Bakery.  (Tr. 130.)  In Dr. Schaaf's first record, dated November 2, 2004 (about 15 months after the injury), Dr. Schaaf indicated that Plaintiff had been her patient since February of 2004.  (Tr. 186.)  She opined that Plaintiff could work at the sedentary level, but stated that back pain prevents him from sitting or standing for more than 30 minutes.  (Tr. 186.)  Dr. Schaaf opined that Plaintiff has to change positions frequently throughout the day and needs to lie down for short periods to regain control of his pain.  Dr. Schaaf felt that Plaintiff was only suitable for home-based computer/desk work.  (Tr. 186.)  On November 24, 2004, Dr. Schaaf again indicated that Plaintiff needs to lie flat for brief periods during the day.  (Tr. 187.)  In a time-loss notification dated May 25, 2005, Dr. Schaaf opined that, due to lumbar disc disease/herniations, Plaintiff was unable to return to any type of work from March 18, 2005, through May 25, 2005.  (Tr. 118.)  She assessed the following limitations: 1) lifting no more than 15 pounds, 2) no bending, repetitive lifting or twisting, and 3) no

1  prolonged standing, walking or sitting. (Tr. 118.) Dr. Schaaf
2  opined that Plaintiff's on-the-job injury will likely result in
3  permanent impairment. (Tr. 11.)

4      In her last assessment, on October 7, 2005, Dr. Schaaf
5  diagnosed herniated lumbar discs, causing spinal stenosis and
6  chronic back pain; a T-8 compression fracture; tendonitis in elbows
7  and wrists, right worse than left; chronic right ankle pain;
8  hypertension; hyperlipidemia, and morbid obesity established by a
9  body mass index greater than 40. (Tr. 192.) Dr. Schaaf continued
10 to opine that Plaintiff could not walk, sit or stand longer than 30
11 minutes, and could only lift 15 pounds. (Tr. 192.) She noted
12 Plaintiff's report that his wrist and elbow pain make it difficult
13 to type longer than 15 minutes. (Tr. 192.)

14     Plaintiff alleges that the ALJ also failed to properly credit
15 Dr. Pace's opinion. Following Plaintiff's injury, William R. Pace,
16 III, M.D., examined Plaintiff on June 13, 2003, at the request of
17 the Department of Labor and Industries. (Tr. 129-135.) Dr. Pace
18 reviewed Plaintiff's medical records. After his physical
19 examination and record review, Dr. Pace diagnosed lumbosacral
20 strain, degenerative disc disease of the lumbar spine and morbid
21 obesity. (Tr. 133-134.) Dr. Pace opined that, based on Plaintiff's
22 performance on testing, he is "marginal for any type of employment
23 beyond sedentary." (Tr. 134.) Dr. Pace felt that Plaintiff "should
24 be tested to tolerance." (Tr. 134.) Dr. Pace believed, based on
25 bulging discs and damage to the annular ligaments at L3-4 and L4-5
26 and spinal stenosis, that Plaintiff's lumbosacral impairment existed
27 before his occupational injury. (Tr. 135.)

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 10

As indicated, the ALJ assessed an RFC for the full range of sedentary work.  In assessing Dr. Schaaf's opinion, the ALJ stated: "With indications for 'flexibility for frequent change in position and brief periods of lying down,' the claimant's treating physician, Karen Schaaf, M.D., specifically endorsed a 'sedentary' level functional capacity in November 2004 (Exhibit 11F/1-2)."  With respect to Dr. Schaaf's time-loss notification of May 25, 2005, the ALJ notes the following limitations: unable to lift more than 15 pounds; no bending, repetitive lifting or twisting; and no prolonged standing, walking or sitting.  (Tr. 22, citing Exhibit 11E.)

The ALJ reviewed Dr. Schaaf's October 2005 letter and noted Dr. Schaaf's opinion that Plaintiff's hypertension and morbid obesity also made it difficult to do anything strenuous or stressful in a workplace setting.  (Tr. 22, citing Exhibit 13F.)  The ALJ went on to observe that, since onset in August of 2002, the only recommended treatment has been "physical therapy and smoking cessation."[1]  (Tr. 22.)  The ALJ appeared to rely on six factors when he weighed Dr. Schaaf's opinion: (1) Plaintiff canceled many physical therapy appointments; (2) In June of 2003, Plaintiff did not appear motivated to manage his pain, and was resisting any improvement as he was not satisfied that his entire claim was being addressed; (3) a preoccupation with getting "disability" was noted; (4) the April 2004 consultative psychological evaluation by Thomas McKnight,

---

[1]Dr. Schaaf pointed out that Plaintiff's physical therapy, including aquatic therapy, yielded poor results.  (Tr. 186.)  Plaintiff was not a surgical candidate because of age, obesity and smoking.  (Tr. 131, 137.)

Ph.D., indicates Plaintiff preferred to emphasize his limitations and appeared to lack motivation to return to work; (5) "by the claimant's own admission, he was able to play video-games and sit for up to two hours at a time prior to the expiration of his insured status (See Exhibits 4E/1; 7E/1; 8E/3; 10F1)"; and (6) Plaintiff "has an exceptionally minimal work history to begin with." (Tr. 23.)

The first, four and the sixth factors appear to relate to Plaintiff's credibility rather than to an assessment of Dr. Schaaf's opinion. While this may be appropriate in some situations, such as an ALJ's indication that a treating physician's opinion is discredited because it is based largely on a claimant's unreliable self-reporting, the ALJ fails to indicate that he applied such reasoning here.

The fifth and arguably strongest factor relied on by the ALJ in discrediting Dr. Schaaf's opinion is Plaintiff's admitted ability to play video games and sit for up to 2 hours at a time. The exhibits cited by the ALJ for this proposition do not entirely support the ALJ's characterization. The first exhibit cited by the ALJ shows that on September 3, 2003, Plaintiff stated that he can sit for up to 2 hours in a recliner and "5 minutes in a hard chair" before he needs to rest. (Exhibit 4E/1 at Tr. 86.) In the second exhibit cited, dated January 5, 2004, Plaintiff wrote that he can sit for 2 hours before he needs to rest. (Exhibit 7E/1 at Tr. 100.) The third exhibit relied upon is dated January 5, 2004. Plaintiff indicated that he plays a game system on a television and plays video games; no length of time is given for these activities.

(Exhibit 8E/3 at Tr. 105.)  In the last exhibit, dated April 14, 2004, Plaintiff told Dr. McKnight that he enjoys playing video games.  Dr. McKnight noted that Plaintiff rents movies and spends significant time watching television.  (Exhibit 10F at Tr. 183.)

The exhibits do not appear to support the ALJ's strongest reason for rejecting Dr. Schaaf's opinion.  Dr. Schaaf consistently opined that Plaintiff's sitting, standing and walking are limited to 30 minutes at a time, and Plaintiff needs to lie down for short periods during the day.  The exhibits cited by the ALJ do not indicate an admission by Plaintiff that he is able to sit for up to 2 hours playing video games.  The strongest reason relied upon by the ALJ for rejecting Dr. Schaaf's limitations is not supported by the record.

Dr. Schaaf's assessed limitations take Plaintiff out of the full range of sedentary work.  Yet, the ALJ characterizes the record as "(e)ven with disc bulging/herniations indicated, all medical source opinion evidence was specifically endorsing a 'sedentary' level functional capacity."  (Tr. 23.)  The ALJ's reading of the medical source opinions appears to overlook the limitations assessed by Dr. Schaaf which take Plaintiff out of the full range of sedentary work.

The ALJ did not have the benefit of Dr. Pace's opinion given during Plaintiff's Worker's Compensation case, because, as Plaintiff points out, it was presented for the first time to the Appeals Council.  (Ct. Rec. 14 at 12-13.)  In that case Dr. Pace testified that Plaintiff,

> [C]an't do anything very long.  A lot of people who are really heavy and have back pain can't lie down very long.

1    That's a given.  They can't sit very long.  So what's
     left?  They have to stand.  So I'm sure he – well, you
2    know, it's probable that this gentleman, just to get
     through the day, has to sit, stand, maybe move around a
3    little bit, maybe lie down for a little while.

4  (Tr. 227.)  Dr. Pace went on to opine that he believed Plaintiff

5  could perform his past work as a security guard.  (Tr. 228.)  Dr.

6  Schaaf disagreed.  (Tr. 186.)

7       The Commissioner opines that Dr. Schaaf's 30-minute limitation

8  on walking, sitting or standing is within the requirements of the

9  sedentary jobs identified by the vocational expert because Plaintiff

10 would be able to shift position momentarily as either an assembler

11 or a cashier.  (Ct. Rec. 15 at 9-10, citing Tr. 273.)  According to

12 the record, when the VE was asked whether a person "had to be able

13 to sit-stand half hour at a time to change from one to the other

14 would any of these positions (assembler or cashier) accommodate

15 that?"  The VE replied, "Probably not."  (Tr. 273.)  Moreover, the

16 ALJ does not include Dr. Schaaf's limitation that Plaintiff is

17 required to lie down for short periods during the day to regain

18 control of his pain.  The ALJ does not give a reason for failing to

19 include this limitation.

20      The ALJ observed that Plaintiff"s DIB claim requires

21 establishing disability prior to September 30, 2003.  (Tr. 23.)  The

22 ALJ points out image testing of Plaintiff's lumbar spine in June of

23 2004 "clearly showed that his previously indicated 'moderate' sized

24 disc herniations/protrusions were now listed as 'mild.'" (Tr. 23.)

25 It appears that the ALJ considered Plaintiff's improvement (in one

26 area) in 2004 to determine that disability was not established

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS – 14

before his last insured date of September 30, 2003.[2]  This too is
error.

The ALJ rejected treating physician Dr. Schaaf's opinion that
Plaintiff was limited to walking, sitting or standing for no more
than 30 minutes at a time, and that he needed to lie flat
occasionally during the day.  (Tr. 186-187, 192).  To reject a
treating physician's opinion, the ALJ must set forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record.  *See Flaten v. Secretary of Health and Human
Serv.*, 44 F.3d at 1463.  The ALJ has not done so.

The additional medical evidence shows that about a year before
onset, a September 12, 2002, MRI revealed moderate-sized posterior
osteophytic spurs at L3-4 and L4-5.  (Tr. 120.)  A December 1, 2002,
MRI showed a moderate-sized broad-based central disc protrusion with
moderate central stenosis at L4-5, and a broad-based central disc
protrusion, L3-4, with moderate to severe central stenosis.  (Tr.
121.)  On January 13, 2003, a lumbar spine CT showed annular tears,
disc protrusions and facet hypertrophy at L3-4 and L4-5 causing
moderate canal stenosis of these levels.  (Tr. 123.)  Upon referral

---

[2]On November 24, 2004, Dr. Schaaf noted that she based her
limitations on information reviewed from prior records, including a
June 21, 2004, lumbar CT.  Based on this report, together with
previous CTs, MRIs and a discogram, she observed: "Mr. Conley now
has disc bulging at T12-L1, L1-L2, and L2-L3.  In addition, his
radicular symptoms down the right leg have worsened to the extent
that he now requires a cane to stabilize his gait and prevent
falling."  (Tr. 187.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS - 15

to John Long, D.O., at an appointment on April 2, 2003, Plaintiff told Dr. Long that the electric stimulation and bicycling at physical therapy increased his pain. (Tr. 125.)  Dr. Long reviewed the medical records, particularly MRIs, and found that Plaintiff demonstrates spinal canal narrowing at L3-4 due to a central posterior disc herniation and mild apophysial spondylosis; at L4-5 he also noted spinal canal narrowing secondary to disc herniation and apophysial spondylosis.  Dr. Long observed that Plaintiff's condition did not change between the MRI's taken December 1, 2002, and March 11, 2003.  (Tr. 127.)

A lumbar MRI taken on June 17, 2003, revealed moderate to severe spinal canal narrowing due to mild vertebral and moderate facet spondylosis, combined with a small posterior disc protrusion at L4-5, unchanged since March 11, 2003.  (Tr. 138.)  This MRI revealed moderate to severe spinal canal narrowing due to mild vertebral and mild facet spondylosis, congenitally short pedicles, and a small central disc protrusion at L3-4, again unchanged since March 11, 2003.  (Tr. 138.)  Following Plaintiff's neurosurgical consultations on December 18, 2002, and January 28, 2003, with Jeffrey Hirschauer, M.D., Dr. Hirschauer at first felt that Plaintiff might be a candidate for nucleoplasty; he did not favor arthrodesis because of Plaintiff's age, obesity and cigarette smoking.  (Tr. 131.)  Dr. Hirschauer evaluated Plaintiff's repeat MRI on June 22, 2003, noted the same findings and again did not deem plaintiff an operative candidate.  (Tr. 137.)  The ALJ notes that consulting agency physicians opined that Plaintiff could perform work at the sedentary-light levels.  (Tr. 22, citing Exhibit 7F at

1  Tr. 157-164; Exhibit 9F at Tr. 173-180.)

2      Dr. Schaaf's and some of Dr. Pace's opinions are essentially
3  only contradicted by consulting agency physicians.

4      As noted, if the treating or examining physician's opinions are
5  not contradicted, they can be rejected only with clear and
6  convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
7  1996). If contradicted, the ALJ may reject an opinion if he states
8  specific, legitimate reasons that are supported by substantial
9  evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44
10 F.3d 1453, 1463 (9th Cir. 1995).

11     The ALJ fails to present either clear and convincing or
12 specific and legitimate reasons for rejecting the limitations
13 assessed by Plaintiff's treating physician and to a lesser extent,
14 by examining physician Dr. Pace. The consulting physicians' opinion
15 that Plaintiff can perform a full range of sedentary work is unique
16 and not supported by other evidence in the record. The ALJ erred
17 when he rejected the opinions of the treating and examining
18 physicians in favor of the consulting physicians.

19 **B.   Remedy**

20     There are two remedies where the ALJ fails to provide adequate
21 reasons for rejecting the opinions of a treating or examining
22 physician. The general rule, found in the *Lester* line of cases, is
23 that "we credit that opinion as a matter of law." *Lester* v. Chater,
24 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502,
25 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.
26 1989). Under the alternate approach found in *McAllister v.*
27 *Sullivan,* 888 F.2d 599 (9th Cir. 1989), a court may remand to allow

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING
AN IMMEDIATE AWARD OF BENEFITS – 17

the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister)*; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). When credited as a matter of law, it is clear from the opinions of the physicians except the agency physicians that Plaintiff was disabled prior to the date last insured, September 30, 2003. Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **GRANTED;** the matter is **REMANDED** for payment of an immediate award of benefits.

2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED.**

3.    Judgment for the **Plaintiff** shall be entered.

4.    The District Court Executive is directed to enter this Order, forward copies to counsel, and **CLOSE** this file**.**

DATED May 16, 2007.

_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE